Both parties step up. Please identify yourself and speak up loud and clear when you're in front of the, because it's not a, it just records your voice, it's not a mic. Good morning. My name is Ann McLennan and I'm here on behalf of Henry Johnson from the Office of the State Appellate Defender. And Assistant State's Attorney Mary Bowland on behalf of the people. Okay. All right. You want to reserve a few minutes for about... A few minutes. Okay. Thank you. Excuse me just one second. I'm sorry. There was, we had a little confusion in the back. Okay. May it please the court, I'd like to discuss the first issue in the brief dealing with the other crimes evidence. This is a highly unusual other crimes evidence case in that the complaining witness from the other crimes evidence didn't actually testify. And the other crimes evidence in this case was admitted for identity and to describe the circumstances of the arrest. So I want to discuss both of these, starting with the circumstances of the arrest. So the other crimes evidence did not, went well beyond what was necessary to describe the circumstances of the arrest. All that was necessary was for the police officer just to testify. They saw the man, it was double parked. Upon further investigation, they arrested Johnson and they found AP's... The man is the same. The MO is pretty much the same. So... The license plate is the same. So when you're talking about MO, you know, modus operandi, or identity, so in terms of identity, identity wasn't an issue here. There was no issue of misidentification. And I, because I did not read the record, I'm sorry. I have just read the brief. Okay. Was there a consent defense file? No, there wasn't a consent defense, but he admits he's in the van. What happened was... I'm not talking about, I'm talking about the time the motion to admit other crimes evidence was filed. Was there a consent defense or was there a contest at the motion as to whether or not he was going to say he was there? I thought, I do remember reading that. That there, you remember reading that there was... And that he was not saying he was going to admit it was him. He was challenging that it was him. That's correct. He, but by the time of trial and even during opening statements, defense counsel placed him in the van and explained that it was going to be, you know, this was an argument about a prostitution deal sort of, you know, turned into an argument. So, and there was, you know, besides the motion to eliminate, it was objected to throughout trial multiple times and at the motion for a new trial. And at the pre-hearing motion to eliminate, as you referenced, the state's attorney said that what the jury is not hearing about is they're not going to hear about a rape in the van because JG is not here. But despite the state assuring the court that they wouldn't hear about the rape, Atwater on the stand testified in vivid detail about JG running from the van with her skirt up, without any underwear on. She was hysterical. She got in his truck. They called 911. And Officer Geary then testified that Atwater flagged down the victim, got into his car, and then they went looking for a male. So what else is the jury to conclude from that testimony besides that they're talking about a sexual assault? And then also the state offered into evidence, and it went back to the jury, People's Exhibit 28, which was a picture of JG. There's really no plausible argument that the picture of JG can explain the circumstances of the arrest or identity. Then we have the problematic rape comment that Atwater said on cross-examination. And it was on cross-examination, but it was not responsive. What was the question that was asked? It was, what did, he was trying to get him to talk about What was the question that was asked? It was something about what did you tell, did you tell the detective that she was not wearing panties? And then he said something like, well, I don't remember. And then the defense counsel asked, well, you know, you don't remember or you're not sure. So it had nothing to do about a rape. It was what, he was asked what he told the detective the next day on the phone. But even without the rape comment, at that point, the rape comment was just exacerbating the error. We already knew, you know, from Atwater that this woman came running out of the van with her underwear off and her skirt up. So it wasn't a question at that point. The jury already knew. If JG had testified, would the argument that you're posing change? Absolutely, yes. And I think you can see that in the motions in Lemonade, there was sort of a, you know, transition when the state said, okay, JG's unavailable for whatever reason. The state even backed off and said, okay, we'd like to admit this evidence then for identity and for the circumstances of the arrest. That's when, at that hearing, the state's attorney said, you're not going to hear about a rape in that van because JG isn't here. Everybody recognized, you know, this was... But they didn't hear about a rape in the van other than through Atwater's statement. And that was objected to, correct? Well, Atwater's statement that she came running out of the van with her skirt up and her underwear off and she was hysterical, that was not objected... Well, that was... There was, like, a standing objection to that, but that was... The court didn't tell the jury to disregard that. The court did tell the jury to disregard the one rape comment, but up until then, there was no question what was going on. I mean, the jury... What else is the jury going to conclude from this woman running out of... It's a sexual assault trial, and there's this other woman running out of a van with her underwear off, hysterical, and we're calling 911, and we're looking for a man, and, you know... Even the... Aguirre is the officer, so after JG goes into the officer's car in the petroleum area, he calls her a victim. And, again, that was objected to, and the jury was told to disregard it, but that just exacerbated the problem, because we've already heard, you know, this vivid detail from Atwater. And then the C-story also talked about the skirt up and no underwear during opening statement and closing argument, so reiterated it. And then, as far as identity, we sort of briefly talked about it, but identity wasn't an issue, because he places himself at the scene. It wasn't admissible for modus operandi because she didn't testify. This was like kind of an end run around the Sixth Amendment here, because they couldn't get it in for propensity or they couldn't get it in for modus operandi because she didn't testify. None of the testimony about JG went to prove identity. This error warrants reversal, and the cases tell us that it's the state's burden to prove the error was harmless beyond a reasonable doubt. And there's a lot of cases that give us that standard. Rosado specifically says that. That's discussed in the opening brief. Even the state's case, Clark, says the state has to prove the error harmless beyond a reasonable doubt. Neves is the Illinois Supreme Court case that's discussed in the opening brief. And the three prongs to sort of determine this is whether the error contributed to the conviction, whether the evidence was overwhelming, and if the improperly admitted evidence was cumulative or not. So the cumulative, nobody's disputing that the improper evidence wasn't cumulative, that it didn't come in any other way. So then you have the other two prongs. Was the evidence overwhelming? And I think we can safely say here it's not, because you only have the two people in the band. There's no other witnesses. And then we also have all of these holes in A.B.'s testimony. She says she's going to pick up her kids at 3 a.m. She never really explains what is going on there. I thought she was going to her aunt's house so she could be there to get her kids ready for school. So she originally tells Detective Ruck that she's coming from her aunt's house. And then she changes her testimony and she testifies that she's coming from Dale Smith's house. Wait, wait, wait. She testified to both of those things? No, she was impeached. No, the officer says she said one thing, but she testified to another. Exactly. And it's still 3 a.m. I don't know any school that starts anywhere near 3 a.m. That's many hours. That's how they get from one house to the other to get her kids up to get them dressed to take them to school. Isn't that a credibility determination that's to be made by the trial court? That's kind of hard for us to second-guess that. It just shows you that there were issues with the evidence, that the evidence was not overwhelming. There were questions. All of her testimony didn't add up. She's refusing HIV testing even though she's pregnant and says she's sexually assaulted. There's no DNA evidence, although she describes a lot of contact. And then the other, the third thing you look at is whether the error contributed to the conviction. And I think I just discussed that there's a lot of holes in A.B.'s testimony, and there weren't a lot of holes in J.G.'s story. And that's important because she wasn't there to testify, so there was no way to meet that evidence. There was a lack of DNA evidence, and then the J.G. testimony tipped the scales here. The impact of another woman claiming that Johnson sexually assaulted her can't be overstated. He had no chance to meet that evidence, and for these reasons we ask that you reverse the remand for a new trial. Thank you. Good morning once again. Obviously, identity was at issue in this case. But let's be clear about the record for a minute. The court has asked about the record. The people had 10 witnesses, comprised 350 pages of testimony. Defendant testified on his own behalf for 104 more pages. Atwater, which is the witness that has been described here today, that took the woman in the car and drove behind the car, gave the license plate to the police, and eventually transferred the woman out of the car. His testimony on direct was 20 pages. He never mentioned one thing about the circumstances beyond seeing what he saw, taking the woman in the car because he thought she was in trouble, driving to the police, giving them the license plate number. And in the 17 pages of cross-examination, he also didn't say anything. But at the 17th page of a 21-page cross-examination, where he was repeatedly questioned about what he told the police, what he remembered, what he recollected, he said, well, I remember I told them that she was screaming and she said she was raped when she ran in my car. Immediate objection, immediately stricken. The jury had been informed before Atwater testified that he was going to testify for a limited purpose of identification, and it was coming in for also the circumstances of arrest because it related to that. So they'd already been warned, immediately stricken, and they were obviously admonished again at the end of the case. That's the sole reference to that, and it came on cross-examination. And it was raised, the defense counsel below was very active, made many objections, raised it again on a mistrial motion outside the presence of the jury, and the court noted that, yes, that statement had been excluded, but it came in on cross and it could have come in as an excited utterance. And so the court ultimately determined that it was harmless. And I don't think there's a question that there's some discussion in the brief that it could have been an excited utterance because the officer wasn't, or Atwater wasn't excited, and that's obviously incorrect. But a rule of evidence 803 says, regardless of the declarant's availability, because it explains what happened with Atwater and where he goes and what goes on. Now, so that's Atwater. Now the question is, is the identification evidence necessary? Because that's part of the argument here. Well, let's think about this case. Identity is always an issue when a defendant denies he's a perpetrator. And by the end of the investigation of the case, what did the police know? What was the state facing at that point? Well, he had told the police, I didn't rape anybody. My friend Patty lent him the phone that was found in the car that was actually traced back to the victim in this case. And then he told another detective later in the day that some girl named Keisha dropped her ID and her phone. The ID, again, was the victim's in the case. After he gave her a ride to the gas station. So that is what the state, on a reasonable doubt case, was looking at as we proceeded to trial. Now, he gets up at trial, yes, and he says, oh, I took A.B. into the car. And he has this entire scenario where he paid her 30 bucks, but she got out of the car and went running off. Can I ask one question? Sure. What did he say in opening, as defense counsels say, in opening statement? In opening statement, he did claim that he didn't sexually assault A.B. and that there was a disagreement. So kind of set up his testimony, absolutely. But when you're preparing for trial, you don't wait until opening. But until that moment, he had never said that he knew or he had never claimed he had been with A.B. No. He had told the police no. Emotion and limine. Right. Certainly not emotion and limine. So clearly identification was at issue. And the defendant also argues that the narrative of the arrest was excessive. But, again, we're talking about discretion. We're talking about how we link a defendant. So ten days later, Atwater's driving down the same street in the same area, about the same time, and this woman comes flying out. He takes her into the car because he thinks she's in trouble. He then follows that man. He gives that license plate, as I've said, to the police. And he eventually transfers the woman. Defendants cited the Clark case, and the Clark case really just explains the two ways that identification evidence can come in. Yes, it can come in as M.O. if you rise to the level of a signature crime. Or it can come in where there's a common piece of evidence that links those two. So the point is that as Atwater transferred the woman that we now know as J.G., who was not involved in the case, as he transfers that woman to the officer, the officer then begins driving around with this license number looking for the van. He finds the registration information. He drives over. He finds the van parked on a street near where it's registered. And he makes an arrest of the defendant. She's actually still in the back of the car at that time. And he makes the arrest of the defendant. And that van is the very same van that A.B. has described and that her I.D. and her phone is found. So the point is this is not M.O. in terms of modus operandi type evidence, but it's identification through a common element in these crimes. And the defendant cites Clark for the point that, you know, the fact that somebody stole a bicycle years earlier doesn't mean they stole a bicycle today. That's not what it was introduced for. So clearly identification was at issue. Clearly the circumstances of the arrest were important because we had to establish how could the police just appear on the street 10 days later and just happen to know? Because remember, A.B. gave a partial plate. She didn't give a whole plate. So they've got a description of a van. She's not able to describe – she's able to describe him, but she doesn't know him. So she only gives a description. Atwater actually doesn't see who's driving the van except it's a bald guy. So he can't – so his description is very vague. What links these individuals and these cases is the van and all the things found into the van. So clearly looking at the rest of the evidence, the rest of the evidence did corroborate A.B.'s statement. Defense counsel here this morning talks about some of the inconsistencies that were placed before the jury. The jury heard those things. She underwent an extensive direct examination. I think her cross-examination was 85 pages. Defense counsel in closing argued that he broke the victim and was able to establish that amount of inconsistencies. But there were a lot of corroboration as well. So she immediately reported. A.B., and I'm talking about the victim in our case, escapes the van, runs out to the senior citizen home where there is video, and they see her on video running with her pants half off. She immediately goes to that security guard and tells him, I've been raped, please call the police, and he does. We do have that video. Obviously I've talked about the van. She makes consistent statements to the hospital nurses that she goes to a few hours later. Yes. She goes home first. She gets her kids. She takes care of what needs to be taken care of, and then her and her mom start on a bus down to the hospital, and eventually she gets a ride. But she makes consistent statements to the nurses. And, of course, defendant is in possession of the phone and the driver's license, and he gives the statements he gives to the police. So could the reasonable probability be that without the one statement made, 17 pages into cross-examination, that somehow this case would have been a different verdict? I think the answer is there's no reasonable probability. There was a lot of corroboration in this case. And as the Court well knows, most of these sexual assaults, you're not going to have more witnesses. They're rarely in the middle of the street. But we did have some video. It was instantaneous. We did have the security guard right there on the scene, and we did have a lot of consistency in her statements. So at the end of the day, defense counsel simply disagrees with the eliminate order, but has not overcome the presumption that the jury followed the court's repeated instructions that you were to consider Atwater's testimony for a limited purpose. And all of the other statements that A.B. made were extensively placed before the jury on direct and cross-examination. So defendant, at the end of the day, he's certainly entitled to a fair trial. He's not entitled to a perfect trial. And in this case, the people argue that he did get a fair trial and his conviction should be affirmed. There is an additional request for credit for time served. The people have conceded that either this Court can correct it or it can go back under the new Supreme Court rules. But with that, there are no further questions. Thank you. Thank you. I have three brief points. So first of all, even an excited utterance can be, if it was an excited utterance, which we don't even really know because it was a non-responsive answer during cross and stricken, but even an excited utterance can be improper other crimes evidence and more prejudicial than probative. An excited utterance can also violate the Sixth Amendment right to confront. Second of all, I think that the State is making too little of what Atwater said. So the State is just limiting it to this one rape that was on cross, but that's discarding everything else that Atwater testified to, that he painted the picture vividly. Then the State talked about it during opening and closing. It was repeated often that her skirt was up and she wasn't wearing underwear. And then the third point I have is that identity was not an issue here because he places himself at the scene. The cases all say that if he places himself at the scene, if he's in the room, they're discussed in the opening brief, that identity is not an issue. If they're talking about the common element here, the common element is the ID, and they did not have to get into the sexual assault of J.G. to get into the common element of the ID. They had the partial plate from A.V. They had a description of the van. And then my final point, Officer Aguirre, when he's driving around the area trying to find this van, he finally comes to 3820 West Adams. He says, we were led to 3820 West Adams. So he never really even describes exactly how he got to 3820 West Adams and how it connects to J.G. So they could have just started there. They didn't need everything that preceded it that turned it into a mini trial, denied Mr. Johnson his right to a fair trial. And for those reasons, we ask that you reverse and remand for a new trial. Thank you. All right, we will take this case under advisement.